THIS case came on upon the master’s report and exceptions filed by Mr. and Mrs. Eden. The exceptions made three points :
1. That some of the items admitted by the master and put to the debit of the complainant were admitted without vouchers.
2. That the master allowed interest on the balances *242 at the end of every six months. Whereas no interest should have been allowed at all.
s* That the master has omitted to give credit to defendants for the bond of Jos. Darrel, the complainant.
^ , , , ,. , On the 1st and 3d exceptions, it was agreed by the counsel that they would re-examine and settle those points between themselves ; and the counsel have since withdrawn their first exception.
The second exception was fully argued, and requires the decision of the Court.
As the very right to,allow interest was brought under discussion in this case, it seems proper to examine this question fully.
The oty cases did not allow interest against executors where they had monies of the estate in their hands. So settled was this principle, that in the case of Radcliffe vs. Graves, 1 Vern, 197, it was said there were at least forty decided cases against the allowance of interests against executors. The Court however in that case, broke through the old rule and allowed interest. But the decree was reversed on appeal to the House of Lords. This continued to be the rule, and even as late as in the time of Lord Hardwicke, interest was refused. ■ In the case of Adams and Gale, 2 Atk. 106, Lord H. said, “ As an executor may make use of money which, is perpetually coming in by assets of the testator and turn it to his own advantage; and as it is not improper -for an executor to take it on his own account, where he is a responsible man and ready to answer debts and ■legacies when called on, therefore I do not think it right to allow interest for the note.”
The doctrine however was reconsidered by LordThur-low, in the case of Newton and Bennet, 1st Brown’s ch. rep. 359, and the old rule was denied to be the law of the Court 5 a higher equity was introduced, and it was then firmly established, and has never since been denied there that where an executor or trustee has made or received interest on the money of the estate, he is chargeable in equity with interest. And by other decid *243 ed cases, it has been settled that if an executor or trustee should keep money in his hands for any length of time, which he might by application to the Court, or by vesting in the funds have made productive, he shall be chargeable with interest thereon.. See 3 Brown, 73, Littlehales v. Gascoigne; 3 Brown 433, Franklin v. Frith; 1 Brown, 375, Perkins v. Bayntum. And the executor investsing money in the funds shall be protected from any fall in the stocks. 3 Bro. rep. 147, Hutcheson v. Hammond, and the case of Champion cited therein, and 3 Bro. 147, Franklin v. Frith. In this state interest has been refused formerly. See the case of the executrix of John Stock vs. Blake, executor of Rachel Stock, decided in July, 1791, where the Court took the broad ground, that no law obliged the executor-to place money out at interest$ and no authority being given in the will then under consideration, it refused to allow interest. In subsequent cases, however, interest has been allowed. See the case of Stewart vs. Carson, decided in 1797. The master reported in favor of the allowance of interest, and his report was confirmed. From that time it appears to have been the course of the Court to allow interest-on executors’ accounts ; in their favor where they appear to have beenin advance for the-estate; and against the executor, where he appears to have had money of the estate in his hands, and which there was no reasonable ground for him to keep by him unemployed.* Doubtless there are many cases in which an executor may have money in his. hands, and yet it would be improper to charge him with interest thereon y as where suits are pending against the estate, and he ought to be prepared for the event y and under many other circumstances. But it lies with the executor to shew the existence of such circumstafices as. would justify the departure from a rule founded in great justice and equity. In the case under our consideration,, there *244 do not appear any circumstances which required the ex-editors to keep money in their hands ; no urgent debts j no demands which put the estate in hazard. I do think, therefore, that interest should be allowed. But the account is made up, allowing interest, half yearly. This is incorrect$ for the law directs executors to make up their accounts yearly, and interest should be allowed on the annual balances, whether for or against the executor. The interest account should be kept in a separate column, and compound interest should not he allowed.
With respect to Mrs. Rebecca Darrel, one of the defendants, a question was made as to three notes of hand. One, of N. Legare, for 341.15s. Id. and due the 1st of March, 179f j another, of Peter Croft, for 401. 2s. and due 20th January, 1798 ; a third, of Robert Darrel, for 461. due 20th January, 1798. Joseph Darrel, the executor of Jonathan Darrel, died in 1796, and the notes fell into the hands ofWm. Darrel, the administrator.
It was contended for complainant, that by defendants’ laches, all these notes were barred by the statute of limitations, and the money lost, and that the defendants were liable for them. On the other hand it was insisted that with respect to the first note, (that of N. Legare) Mr. Jonathan Darrel, brother and co-heir of the complainant, had given a receipt for that note on the 17th July, 1800, and had taken the note on him.
I am so reluctant to make executors or administrators liable for debts which they have not received, and which many circumstances (forgotten after many years, especially where the executors are dead,) might have prevented their receiving, that I am willing to be satisfied with any reasonable-excuse to exonerate them from the responsibility which would necessarily attach to any gross neglect of collecting the debts, and suffering them to be lost for want of reasonable diligence. I am therefore disposed to admit that as .one of the heirs reserved the note many years ago, without any objection *245 at the time, this shall exonerate the executors as to that ’ n°te.
Each party own assessor5
Mr. Simons, for complainant.
Mr. Drayton, for defendants.
As to the second note, (that of P. Croft,) it is alleged that he was insolvent at the time the note fell due, and even when it was taken. This certainly would furnish a complete excuse for the executor, upon the fact being established; and Mr. Parker’s testimony I think completely establishes his insolvency.
As to the third note, (that of Robert Darrel,) it was conceded that he was solvent, and no reasonable excuse was made for not collecting that debt. I think that the executors are liable for that note.
With respect to the allowance of sixty dollars to each ef the assessors to the master, I think each is bound to pay his own. They are of their own choice ; they were called in by consent; and I am not aware that the Court could allow the demand as part of the costs against the others — therefore let each pay his own assessor.
There was no appeal from this decree.

 I have conversed with the master on this subject, and he states this, to have been the course of the Court for a considerable tiiqe past.